Neal *et al. vs.* Perkerson, sheriff, *et al.*

1. Homestead was not waived by the following covenant in a mortgage on land : "And besides said balance of purchase money, and a

mortgage for three thousand dollars in favor of John Neal, Sr., dated the 26th day of October, 1874, due at twelve months, there is no other incumbrance on the title, and the said Sparks hereby covenants that no other incumbrance shall be hereafter added to those above enumerated upon said property, until the debt to secure which this mortgage is given, has been fully paid off and discharged."

2. Directions given for the distribution of the fund in court.

3. Mortgage by husband to wife to secure a portion of her separate estate previously used in the purchase of the mortgaged property, will be postponed to senior mortgages given by the husband on the same property to third persons, who took without notice of the lien of the wife.

4. Joint residence of husband and wife on realty, does not give notice of any claim of interest in it by the wife.

5. An assignee for value of the wife's mortgage, reciting that it is to secure the payment of a part of the purchase money which belonged to her separate estate, can subject the homestead. The husband will be estopped from denying the recital in his mortgage.

Homestead. Waiver. Mortgages. Husband and wife. Notice. Estoppel. Before Judge CLARK. Fulton Superior Court. April Term, 1878.

Reported in the decision.

P. L. MYNATT; HENRY HILLYER, for English, cited as follows: Tax and purchase money *fi. fas.* subject homestead, Code, §1949; 49 *Ga.*, 551. 557. Subrogation of English to McLendon, Code, §891. Mortgage binds homestead, 45 *Ga.*, 483.

MARSHALL J. CLARKE, for Neal, cited as follows: Homestead not waived in English mortgage, 41 *Ga.*, 622 ; 55 *I.b.*, 695; 56 *Ib.*, 36, 53: 59 *Ib.*, 837; 1 Bouv. L. Dic., 468 ; 41 *Ga.*, 196; 44 *Ib.*,600 ; 45 *Ib.*, 310 ; 47 *Ib.*, 629 ; 51 *Ib.*, 186 ; 55 *Ib.*, 182. Nicholl's debt not good against homestead, Code, §1944. No notice of wife's claim, Code, §§3091, 3092, 3119, 2329.

JNO. L. HOPKINS, for Sparks, cited as follows: No waiver of homestead, 59 *Ga.*, 818 ; Code, §2703 ; Rawle on Cov. for Title, 135, 186 ; 4 *Ga.*, 601 ; 4 Kent, 473. Spark's right homestead, 54 *Ga.*, 570.

JNO. T. GLENN, for Nicholls, cited as follows: Nicholls' debt was for purchase money, 55 *Ga.*, 622; 53 *Ib.*, 485. It took priority, 54 *Ga.*, 569.

WARNER, Chief Justice.

On the 26th of October, 1874, Sparks borrowed from Neal $3,000, and to secure him! gave him a mortgage on a city lot and appurtenances situated at the corner of Line and Pryor streets, in the city of Atlanta.

On the 25th November, same year, Sparks borrowed from English $3,500, and to secure him, gave him·a mortgage on the same lot. In both these mortgages it was stated that Sparks had no deed to the property; that he had bought it from Capel McLendon, and had.McLendon's bond for title; that he had paid McLendon all the purchase money except $1,500, and the mortgage to English contains this stipulation: ,' And besides said balance of purchase money, and a mortgage for three thousand dollars in favor of John Neal, Sr., dated the 26th day of October, 1874, due at twelve months, there is no other incumbrance on the title, and the said Sparks hereby covenants that no other incumbrance shall be hereafter added to those above enumerated upon said property, until the debt to secure which this mortgage is given has been fully paid off and discharged."

English afterwards bought from McLendon the purchase money note for $1,500. McLendon delivered to him a deed to Sparks, in compliance with bond for title, to be filed by English, in case he sued said note to judgment and desired to levy.

The mortgages of Neal and English were afterwards foreclosed, and English sued in name of " McLendon for his use," and obtained judgment on said purchase money note for $1,500 and interest. The two mortgage *fi. fas.*, and the *fi. fa.* for purchase money, were all levied on the property by A. M. Perkerson, sheriff—said deed having been filed as required by law, and properly recorded. On the first Tuesday

22

in April, 1877, the property was regularly brought to sale by said sheriff, under said *fi. fas.*, and sold for $9,000.

In the meantime Sparks had, on the 18th day of March, 1876, given a mortgage on said property to his wife, Nancy D. Sparks, for $3,000, in which mortgage it was stated that on November 1, 1867, Forsyth conveyed to Nancy D. Sparks, for her sole and separate use, certain real estate in Atlanta; that on January 24, 1874, she sold it to Mrs. Hanvey, and received as part payment a note against the Mayor and Council of Atlanta for $3,000, which was paid to C. McLendon as part of the purchase price for the lot on the corner of Pryor and Line streets, etc., and the mortgage was given to acknowledge and secure that interest. Mrs. Sparks transferred this mortgage to Wm. M. Nicholls, as trustee, to pay a debt due said trustee by her husband, John W. Sparks. This mortgage had also been foreclosed by said Nicholls trustee, and the *fi. fa.* was placed in the sheriff's hands and the sheriff was notified to hold up the money, which was done. Sparks had applied to the ordinary of Fulton county to have $2,000 of the fund which should arise from the sale of the land set apart to him for a homestead, which application was duly granted by said ordinary.

Said Wm. M. Nicholls, as trustee aforesaid, ruled the sheriff, in Fulton superior court, for the amount of his mortgage. Sparks, Neal and English each made himself a party to said rule. Said rule came on to be heard at the spring term, 1878. Judge Hillyer being disqualified, Judge Clark, of the city court of Atlanta, presided, and by agreement of all parties to said rule, all questions of fact as well as of law, were submitted to Judge Clark for decision, with the right of exception reserved.

It was agreed that the sheriff had been properly notified of John W. Sparks' homestead, and that the *fi fa.* of McLendon for use of English *vs.* Sparks, $1,500 and interest, was for purchase money—with bond for title—deed filed, etc., in accordance with the satute. All the mortgages were regularly foreclosed.

Nicholls, trustee, introduced his mortgage ; also deed from Forsyth to Mrs. Sparks, and bond for title from Mrs. Sparks to Mrs. Hanvey, and deed from her to the Bank of the State of Georgia, transferree of the bond.

Said Nicholls also introduced John W. Sparks as a witness, who testified that Nancy D. Sparks is his wife ; that he made her the mortgage, and that the facts stated therein are true. She received the $3,000 note herself, and paid it to McLendon herself. It was done in her room. The understanding was that they were to take the note, buy the lot and build a house which she should live in. His wife had no separate estate when he married her. His wife, his son, his daughter, and witness himself, all worked jointly, and the first money made was paid to Forsyth for the lot bought of him. Could not separate the part made by Mrs. Sparks from that made by the others, and don't know what part of said purchase money was the proceeds of her labor. It was a part of it.

The house sold by the sheriff was built for store underneath and dwelling above. Witness and family moved into it in the fall of 1874, and lived there. The mortgage was transferred to Nicholls to pay Sparks' debt to said Nicholls as trustee. $4,500 was the purchase price of the lot on corner of Pryor and Line streets. Witness is claimant for homestead out of this money, and has no interest in Nicholls' mortgage. Owed nothing November 1, 1867.

John Neal then introduced his note and mortgage, and swore that said debt was for borrowed money. Sparks stated that it was to pay the workmen who had been building the house ; to pay the building expenses of house on corner there. When he made that application to witness, he said he was building. Knew nothing of Mrs. Sparks' claim. In making the application to borrow, he inquired for a sum of money which would relieve him, or make him easy. He stated there was no incumbrance on the property except $1,500 of purchase money, and I acted on the faith of that statement.

James W. English then introduced the following *fi. fas.* for taxes, against John W. Sparks, which had been regularly transferred to English and Neal, properly recorded ; and it was admitted that they should be first paid out of the fund in court, to-wit: *Fi. fa.* in favor of the city of Atlanta, tax 1876, $228.00 ; *fi. fa.*, the city of Atlanta, tax 1877, $195.00 ; *fi. fa.*, state and county of Fulton, tax 1875, $100.-00 ; *fi. fa.*, state and county of Fulton, tax 1876, $106.25. He also introduced his note and mortgage, with petition, rules *nisi* and absolute foreclosing, and the *fi. fa.* issued thereon, with the levy of the *fi. fa.* on the land sold, all of which (as well as the proceedings to foreclose the other mortgage) were admitted without objection. He also introduced the deed made by the plaintiff to him April 4, 1877, conveying the property sold, and from which sale the fund arises.

Said English was sworn as a witness for himself, and testified that Sparks applied to him to borrow the $3,500, and said that he wanted to use the money to pay off some debts he (Sparks) owed for the improvements on the property in question ; that he (Sparks) had some money in his business ; that if he withdrew it for the purpose of paying these debts, he would have no money to carry on said business ; that he wanted the money he got from witness to pay off these debts, and would pay it back when the pork-packing season closed ; that there was no other incumbrance on the property, except the mortgage to Mr. Neal for $3,000 and the claim of McLendon—$1,500—for balance of purchase money ; that he would pay off McLendon with part of the money he got from witness. He did not tell witness of Mrs. Sparks' or Nicholls' claim, and witness had no knowledge or information whatever of that claim, or any other claim against the property, until long after he had let Sparks have the money. He was not, at the time, in a condition to spare the money ; but Sparks was so urgent, and witness' feelings to him were kind, so witness borrowed the money for the purpose of lending it to Sparks,

and paid the same rate of interest that he charged Sparks, expecting it to be returned in ninety days. When witness talked to Sparks about the character of the security, Sparks said : " My purpose is to make the security perfect beyond all dispute, and I want to protect you to the full extent of the law." Sparks and Nicholls were partners at the time of the loan. Sparks said if he withdrew the amount he wanted of witness out of his business, and applied it to his debts, he would be compelled to suspend. He said at the end of ninety days he could withdraw the amount from the business, and pay witness back. Sparks failed to pay the McLendon note, and witness was compelled to pay it off, and have it transferred to him to protect himself. That note was for the purchase money of the property covered by the mortgage.

John W. Sparks introduced, by consent, the record of his application for a homestead, and the order granting him $2,000 out of the proceeds of the sale of his property, all of which were regular, and in accordance with the statute. He swore that he superintended the building of the house; hired hands by the day, and built. When he borrowed the money from Neal and English there was nothing due for work or materials to the hands, except one or two lumber bills, amounting to two or three hundred dollars. There was no encumbrance on it, except for purchase money. Witness stated to Neal that he had used up his money on the building, and wanted money for his general business; that he owed nothing on the house. Put Neal's money in his (witness') business; told English that he needed the money in his business; never told either of them that he wanted their money to pay off incumbrances on the house or property. He also answered as follows :

Q. " Did you owe any bank money on that house at the time you went in ?" A. "I owed the bank more or less money all the time."

Q. "How did you pay the Atlanta National Bank ?" A. " With Mr. English's money. I owe the Atlanta National Bank some money now."

The presiding judge made the following order:

"WM. M. NICHOLLS, trustee, etc.,
    *vs.*                            } Rule, etc.
A. M. PERKERSON, sheriff, *et al.*

"After hearing the testimony and argument submitted in the above stated case, it is ordered and adjudged by the court, that the mortgage *fi. fa.* in favor of Nicholls as trustee, etc., against said John W. Sparks, is not founded upon a debt for the purchase money of the property by the sale of which said fund was raised, neither good against the homestead of said Sparks, nor entitled to any priority as to the other *fi. fas.* claiming said fund, because the evidence makes the original debt a loan, without stipulation for such lien or claim, and the mortgage to secure such a debt is younger than the other liens. It is further ordered and adjudged, that the said Sparks, in the mortgage made by him to the said J. W. English, and which is the foundation of the *fi. fa.* in favor of English, waived all right to a homestead in said property. It is therefore ordered that the fund in court be paid out in the following order:

"1. The tax *fi. fas.* against said Sparks, held by English, as well as those in the hands of said Neal and English jointly, shall be paid in full.

"2. The *fi. fa.* in favor of Capel McLendon, for the use of said English, shall be paid in full.

"3 The mortgage *fi. fa.* in favor of John Neal, against said Sparks, shall be paid in full, provided the fund is sufficient, after doing so, to leave in the sheriff's hands the sum of two thousand dollars. If it is not sufficient for this, then said mortgage *fi. fa.* to be paid only so far as it can be and leave this amount in the sheriff's hands.

"4. The sum of two thousand dollars left in the hands of the sheriff, as above provided, shall be paid upon the mortgage *fi. fa.* in favor of said English, against said Sparks, as well as whatever other amount, up to the full satisfaction of said *fi. fa.*, the said fund may allow under the foregoing provisions.

"5. The remainder of said fund, if there be any after the above payments are made, shall be applied upon the mortgage *fi. fa.* of the said Nicholls, as trustee, etc., against said Sparks.

"It is further ordered, that said fund shall remain in the hands of the sheriff until the expiration of ten days from the date of this order, to allow time for *supersedeas*, if desired. This 14th day of May, 1878."

On the trial English and Neal contended, among other things, that the tax *fi. fas.* and the purchase money *fi. fa.* of McLendon, for use, etc., *vs.* Sparks, should be paid out of the fund set apart to Sparks as a homestead, provided said homestead was allowed at all. This judge Clark overruled

and held, as is by the above judgment shown, and Neal and English excepted.

Said English and Neal also contended that the facts made a case of money borrowed and expended in the improvement of the homestead, as to their mortgages, and that the claim of homestead could not, therefore, prevail against them; and they also contended that said Sparks was estopped to deny that said money was so borrowed and expended, and from setting up his claim of homestead as against their debts. Judge Clark overruled said English and Neal on all these points, and they excepted.

Sparks and Nicholls having excepted to the part of judge Clark's decision which was adverse to them, English and Neal also bring their bill of exceptions, and assign error on the three points above enumerated, to-wit:

1. The refusal of judge Clark to order the taxes and balance of purchase money to be paid out of the homestead, if any homestead was allowed.

2. The decision of said judge, that the evidence of said English and Neal did not make a case of money borrowed and expended in the improvement of the homestead, etc.

3. His decision that Sparks was not estopped to deny that said money was so borrowed and expended, and from claiming a homestead in said property as against their debt.

Nicholls also excepted to the judgment of the court, in holding that his mortgage was not founded on a debt for the purchase money of the property sold, and was not entitled to any priority as to the other *fi. fas.* claiming said fund, and Sparks excepted to the judgment of the court in postponing his claim to a homestead to the mortgages of Neal and English, and in ruling that English's mortgage contained a waiver of the homestead. By consent, all the exceptions were heard together, and to be determined as one case.

1. The words recited in English's mortgage did not constitute a waiver of the homestead by Sparks. In order to

have that effect the words should be clear and explicit, expressly mentioning the homestead by name.

2. In view of the facts of this case, as disclosed in the record, the judgment of the court below should be reversed, with directions to distribute the fund in the hands of the sheriff in the following manner: First, the tax *fi. fas.* and *fi. fa.* of McLendon for the use of English against Sparks are to be paid. Second, Sparks' homestead of $2,000 is to be paid. Third, out of the remainder of the fund the mortgages are to be paid in the order of the respective dates thereof, that is to say, Neal's mortgage first, then English's mortgage, and then Nicholls' mortgage.

3, 4. The Nicholls mortgage as such, cannot contest the right to the fund with the other mortgagees, because they had no notice of the grounds of his claim to the fund, which he now sets up, at the time their respective mortgages were executed. It was suggested on the argument that Mrs. Sparks was in possession of the property, and that fact should operate as notice to the prior mortgagees of her interest in it. The reply is that Sparks, the mortgagor, was also in possession of the property at the time he mortgaged it; he and his wife were living together on it, and he was the head of the family, and his wife was subject to him. *Primrose vs. Browning,* 59 *Ga.,* 69. If there should not be enough money left after paying off the other claimants upon the fund, as is quite probable, then he can go upon the homestead, and subject that to its judgment, provided his title to the mortgage is not void as having been transferred to him by Mrs. Sparks to secure the payment of her husband's debt. Sparks, who claimed the homestead, would be estopped from denying that the mortgage debt to his wife, to the extent of $3,000, was not purchase money, and we therefore leave Mr. Nicholls, the assignee of Mrs. Sparks, and Mrs. Sparks, and Mr. Sparks, who has obtained his homestead, to contest among themselves as to whether that homestead fund is liable for the payment to Nicholls of his

mortgage debt, or any part thereof. Let the judgment of the court below be reversed with directions as hereinbefore indicated in this opinion.

Judgment reversed.